And we move to the second case this morning, Jason Lund v. United States. Mr. Henderson Good morning, Your Honors, may it please the Court. I'm Peter Henderson. I represent Jason Lund. The District Court prematurely terminated this 2255 petition on a purported circuit split that doesn't exist and on a question this Court has since resolved, namely that Burrage is retroactive. So at the very least, we suggest that the judgment needs to be reversed and the case remanded for further proceedings. But there is, in our opinion, ample evidence in the record to support Mr. Lund's claim that he is actually innocent, and in the interest of judicial efficiency, one course the Court could take is to remand to grant the petition. Let me talk about the legal issue first that the District Court identified, which is whether intervening case law can provide the basis of an actual innocence claim. That question was answered implicitly by the Supreme Court in Bowsley v. United States, where the Supreme Court told the petitioner that he lost on the merits, but that it still remanded the case so he could make out a case of actual innocence. The only new piece of evidence, new piece of law, was a Supreme Court decision in Bailey. So that case implicitly answers the question here. Ms. Lund But that wasn't a statute of limitations case, correct? Mr. Henderson No, that's correct. Ms. Lund It was other procedural default. Does that make a difference for purposes of our decision? Mr. Henderson No, it doesn't. Ms. Lund Why? Mr. Henderson McQuiggin v. Perkins says that actual innocence excuses procedural defaults specifically on statute of limitations grounds. Ms. Lund But that was a new evidence, newly discovered evidence case, so should that also be distinguished from a change in law? Mr. Henderson No, I don't think so. When the Supreme Court talks about actual innocence, they talk about whether a person is guilty or innocent under the law as the law has been interpreted. And so the hypothetical that this court gave, I think in Krieger, was if there was a law saying you cannot drive while you're intoxicated, if you've had alcohol. And the Supreme Court says, that's not a good law, it's too vague, it's overbroad. And the new law says it has to be above 0.08 of BAC. Somebody could come back and say, I was convicted under this law, no facts have changed, but my BAC was 0.02. So I'm no longer guilty of that, I'm actually innocent. Yes, I was driving after I had had alcohol, but I'm not actually guilty of the crime that I was convicted of because of this new case, which has interpreted the statute. So actual innocence refers to whether you are guilty of the crime that you were convicted of as that law has been interpreted. Now, if there were a decision that interpreted a law and did not make it retroactive, in other words, they say, from now on we're going to apply it this way, but whatever's come before those convictions are fine, then maybe it does make a difference. Ms. DeParle Right. And those that can avail themselves of the actual innocence claim under retroactive change or reinterpretation of the law, as in Burrage, have a window to do so. Mr. McQuiggan Yes, that's right. Ms. DeParle So why should that, why should they maintain the ability to bring that claim after that window has expired under the congressionally enacted statute of limitations? Mr. McQuiggan The same reason why somebody who discovers new facts, who has a statute of limitations to meet, if they miss it, then they're allowed under McQuiggan v. Perkins to pursue it. The main point, which was made in Davis and reiterated in Perkins, is that we don't want innocent people sitting in prison. We don't want people sitting in prison for crimes they haven't committed. That's the miscarriage of justice that allows us to excuse procedural defaults, including a procedural default of not making the statute of limitations. The statute of limitations is not jurisdictional. And we've, in balancing, you know, 2255 is an equitable sort of statute, and in balancing the need for finality versus the need to make sure innocent people aren't sitting in prison, the Supreme Court has balanced it so that a showing of actual innocence meets, can excuse a procedural default. Ms. DeParle I have a threshold difficulty with this argument because, of course, the actual innocence argument is just a gateway argument to excuse a procedural default or a blown statute of limitations. It's not a freestanding constitutional claim, and your client didn't make a constitutional claim in his 2255, his late 2255 petition. There isn't a Strickland claim for ineffective assistance of counsel for failure to preserve the Burrage argument. If he had made an argument like that, then we'd have something to talk about, but he didn't. Well, I disagree with you on the facts and the requirement that there be a constitutional claim. But, so let me start with the facts. Mr. Lund was a high school dropout who prepared this petition pro se. I think we ought to give him leeway in, he presented facts. He said, there's this case I heard about called Burrage. I think it affects my case. I think that I was sentenced in violation of the law. Burrage is a cognizable, provides a cognizable claim under 2255. That's why we have cases like Krieger. It's a retroactive decision, and somebody who's- That was direct appeal. No, Krieger was a 2255. Gaylord also- I'm thinking of the co-defendant's case in Lawler. That's right. Okay, that was a direct appeal. You're right. That was GVR. That's right. And so, Burrage says, what Mr. Lund's claim, if he were an articulate lawyer, would have been in the district court, and how it should be construed, is that I was sentenced in violation of section 841, because the district court did not apply the right standard to evaluate whether my actions caused the death of these people. I was therefore sentenced in violation of the laws of the United States. And as Davis makes clear, it doesn't matter whether it's a constitutional claim or a statutory claim, so long as it's cognizable under 2255. And we reserve those situations for serious cases like this, where somebody faces a mandatory minimum sentence of 20 years, and the law has changed. So I don't agree that a constitutional claim is required. This is a first 2255. And the EDPA requirements for constitutional claims generally refer to state habeas claims under 2254, or second or successive habeas claims in federal court. The second thing, too, is that, again, construing Mr. Lund's arguments below generously, as they should be, Mr. Lund did allege ineffective assistance of counsel. What he said was that my lawyer did not raise this Alain issue. He should have, and he didn't. Now, when should he have raised it? He should have raised it when the case was pending on direct appeal. Alain comes out, and of course, Alain had been pending for a long time, so the lawyer should have known about this anyway. But Alain was decided before the direct appeal was decided. And it's a common practice in this court when new authority comes out that a lawyer will ask either to alert the court to the authority via the 28-J letter or to file a supplemental brief. And that's exactly what the lawyer should have done, and he would have succeeded. We know that from the co-defendant law lawyer. This was an Alain violation. And so I think he has alleged two cognizable claims apart from actual innocence. Certainly, our brief is premised on actual innocence because that's the threshold question. That's where Mr. Lund lost in the district court. We have to get through that gateway. And that's why our first suggestion is that the court remands for further proceedings. We have to get past that threshold question. But Mr. Lund, I think if he had had counsel, would have clearly demarcated. And he did. He said, my claim is based on Burrage. And Burrage is a statutory claim that's cognizable under 2255. So this is not a freestanding claim of actual innocence. Let me talk a little bit about the facts of the case and why we believe he has shown actual innocence. I'll start first with the government mentioned that he admitted to it in the plea agreement. That's just not true. He explicitly reserved these issues as to whether his actions caused the death of others in the plea agreement. And as the court noted in his co-defendant appeal of Lawler, this is an enormous indictment that charges, I think, 28 people with a number of crimes. The indictment itself does not establish an admission. The other thing that has come up since this petition was the case of Weldon versus United States. Now, the government again says, well, you can't rely on that. That's just from the Seventh Circuit. That's not even a Supreme Court case. But I'd directly force attention to Davis, where we had a very similar situation. What happened in Davis was the petitioner there, Davis, his conviction was affirmed by the Ninth Circuit. And after that conviction was affirmed, another man named Fox had his conviction reversed on almost the same facts. And Davis said, well, you need to reconsider this. The Supreme Court denied certiorari. And Davis filed a 2255 petition, relying in large part on this new Fox case that had come from the Ninth Circuit. And the government successfully convinced the Ninth Circuit, no, you've already litigated this. You can't litigate this again. The Supreme Court reversed. Said, no, you can rely on new intervening case law to support a 2255 petition. The facts in this case are almost identical to those in Weldon. What was the binding interpretation by the court in Weldon? I mean, it was a completely different procedural posture. And the court expressly stated that it was not a pining on the substantive issues. So why would it even be precedent available to you? Well, what the court did was it defined distribution in a new way. If the court had not decided that distribution means a certain thing, then it could not have reached the conclusion that the lawyer's performance was deficient. And that's the conclusion that it reached. What it said was that when you have a group of people who are all trying to buy drugs together, and one person buys it from the main dealer and then gives it out to the others, that's not distribution. Notwithstanding the $30. That's right. I mean, what you would add to the hypothetical in Weldon of going to McDonald's, if somebody says, here, I've got $20, go buy all the things, and there's no change expected. But the other thing, the $30 was also in the case of the man who died, that the government conceded in the district court died of multiple things and was admittedly problematic. That scenario was not the case in the other person's death. Simply put, there is reasonable doubt that the heroin was a but-for cause, if it even is distribution under Weldon. And the government has not submitted any evidence that is conclusive as to but-for causation. So the standard is whether a reasonable juror could vote to convict beyond a reasonable doubt, and that standard isn't met here. Well, the toxicology report on one of the people who died did not have multiple causes. It was, and I can't remember which one, but one of them, the toxicology report, definitively ruled that it was opiate intoxication. It was opiate intoxication, although it contained opiates that are not metabolites of heroin. It contained codeine. And there is not testimony, but from police reports, there is evidence that, in fact, this person had not only consumed alcohol and marijuana, but also had ingested oxycodone, which is also an opiate. And so it actually is a mixed bag. Opiate, of course, includes heroin, but it's not exclusive to heroin. So I'll reserve the rest of my time for rebuttal unless there are questions. Thank you. Good morning. May it please the court, my name is Benjamin Tableson, and I represent the United States. A change in the law cannot grant access to the actual innocence gateway. And to see why, it's worth thinking about how that gateway typically operates and how it would operate if this revolution the appellant's asking for actually happened. Right now, if a petitioner whose claim has expired because the congressionally set statutory limitations is run or he's procedurally defaulted discovers evidence showing definitively that he is not guilty, then he is forgiven for his procedural default and untimeliness, and he can bring his claim. And that makes sense, because that means a fact that is this positive, a fact that renders it such that no juror could find him guilty as come forward. And then it's pretty easy to figure out how to determine where to go from there. We need not return to facts from, say, 20 years previous in order to decide the case. Here, however, the appellant asks that a change in the law grant access to the actual innocence gateway. If that happened, then courts would be faced with a situation where 20 years down the line, they might have to apply that new law to facts that may or may not exist or be determinable or intelligible. It's an unworkable suggestion, and there's a reason that it's an unpopular opinion in American courts. Now, Bowsley does not hold otherwise. In Bowsley, the Supreme Court considered a single question. And that question was, can a person who pled guilty get access to the actual innocence gateway? It did not reach a question of whether a change in the law can grant access to the gateway. It dispenses not a single word on that. There isn't even dicta to that effect. It doesn't reach that question. It's a second order question. Bowsley doesn't bear on it. Also, speaking to Your Honor's question from earlier, Bowsley is about procedural default. And there may be a meaningful distinction, for purposes of the gateway, between procedural default and timeliness. Now, in McQuiggan, the Supreme Court said that with evidentiary revelations, the actual innocence gateway, which had been a judge-made gateway through judge-made procedural default rules, should be extended to statutory time limits. It is not obvious if this court is going to expand the actual innocence gateway to contemplate changes in the law, that that gateway should be expanded both for procedural default and for the time limits set by Congress. This is an end run around the time limits set by Congress. And we know Congress can deal with changes in the law, because in subsection F3 of 2255, Congress sets out precisely how to handle a situation where rights are newly recognized. Now, the Supreme Court said in Herrera v. Collins, the passage of time only diminishes the reliability of criminal adjudications. And the appellant admits that reply 23, time for determination of but-for cause of deaths, has passed. It's been nearly 10 years, and fair enough. Now, we think that Your Honors can look at the pre-agreement and the factual basis for that pre-agreement, and see that even under a but-for causation standard, the appellant here caused the deaths of the decedents, in this case. Nonetheless, if the appellant gets what he wants, we're looking at a situation where, say, for example, in a Johnson case. So Johnson and Johnson, the Supreme Court, found that the residual cause of the Armed Career Criminal Act was void for vagueness. That triggered a one-year extension of the time limit to bring claims under Johnson. That time limit has since expired. If a change in law can trigger actual innocence, these claims are going to come for the next 20 years. And how we're going to figure out whether convictions are appropriate 15 years down the line is beyond the government, in this case. I'll also note that, well, here, let me respond to a few of the arguments made by my colleague. Well, then. Does it matter that Johnson's based on a recidivist statute, as opposed to Burrage, which is based on a factor that would have to go to the jury? Your Honor, I think that, without taking position on whether those Johnson claims would succeed, I certainly think that appellants would take the position that, because it renders certain conduct beyond the reach of the law, they have a viable claim. And I would imagine those claims would keep coming and have to be dealt with for years and years and years. But Your Honor's point is a fair one. I do want to speak to Weldon. Now, in this reply, the appellant makes a fair point that Weldon was not available to the petitioner when he brought his claim, and only came down months after his petition was rejected. What that means is that, if the petitioner would like to bring a Weldon claim, he can bring a second or successive 2255 motion. Now, this is not the appropriate form in which to do that, as a threshold issue. And as a secondary issue, if he does bring it below, his claim will fail, because the right has not yet been recognized by the Supreme Court. And it must be, in order to trigger 2255-F3. So Weldon is not available here. Judge Sykes, you pointed out that there's no underlying constitutional claim here. I think that's exactly right. The district court, in this case, went to the trouble of emphasizing the word not in the sentence, that the petitioner did not bring an effective assistance of counsel claim below. And so what we have, essentially, is the change of law is sword and shield here. It's the substance of the claim, and it's a shield against procedural default and untimeliness. And so we have a situation where claims are necessarily standalone claims, if they are based on changes in the law. Neither the Supreme Court nor this court has ever recognized a standalone claim like that. Does the standalone Burrage claim suffice? No, Your Honor. First, it's not constitutional. And I'm not aware of. That's not a constitutional claim. And I'm not aware of any case that has found that an underlying claim need not be constitutional. And the appellant cites to none. Davis does hold that non-constitutional claims are cognizable under Section 2255, but that was, of course, not an actual innocence gateway case. So no, in the government's view, Burrage does not suffice. And so for that reason, I'll also note that in Loewe v. Endicott, this court expressly rejected the notion that a substantive court decision can be a factual predicate within the meaning of a statutory tolling mechanism like 2255-F4. It's a well-reasoned decision, and we think, Your Honor, that that controls here. OK, we have a circuit split going on on this question about legal innocence versus factual innocence. The Ninth Circuit and, I guess, the Sixth have said it can be, and the Eleventh and the Fourth have said it can't be. So we've got kind of equipoise there. Obviously, the government's position is that the Eleventh and the Fourth got it right. Those were older cases, I think, pre-McWiggin, maybe post-Bowsley. I don't have the chronologies clear in my head, but the most recent one is the Ninth Circuit's decision, I think. Your Honor, the Ninth Circuit decision relies on what it interprets to be an implication in Bowsley that changes in the law can satisfy the actual innocence gateway requirements. And for the reasons I articulated earlier in the government's view, that's a mistake. Bowsley doesn't reach that question. Contrary to the Ninth Circuit's impression as articulated in its case, it reached only an earlier threshold question and took no position on the change in the law. And so there is no reasoning in the Ninth Circuit opinion that we think applies here and overcomes the obvious problems with this enormous expansion of the actual innocence gateway. The Supreme Court and this Court have said, that gateway is extremely narrow. It's available in only very rare circumstances. And that's right if only a factual revelation that that's an unusual circumstance. Changes in the law are not unusual. They happen all the time. And so the actual innocence gateway would no longer be available. In rare cases, it would be available constantly. If you have no questions, thank you. Thank you, counsel. How much time? You have two minutes, Mr. Anderson. Thank you. Let me briefly address this specter of Johnson claims going on and on. Our clients do not like being in prison. If a new case comes out, they almost immediately will petition in a 2255. There's no risk that people 20 years from now are going to say, oh gosh, I was looking at cases and I'm now going to file after I've been in prison for 20 years. That's a total red herring. There is no circuit split. The circuits that have purportedly come out on the other side of this cite to Bowsley. And what Bowsley is talking about is a difference between whether you're actually innocent or whether something occurred in your conviction that was legally improper. For example, if you were convicted and a new case comes out and says they shouldn't have given you that jury instruction, that doesn't mean you're innocent. That just means that you were improperly convicted. That's legal insufficiency. It's not legal innocence, it's legal insufficiency. Actual innocence means a new case comes out and says, this statute does not cover the conduct that formed the factual basis of your conviction. That's not the kind of claim we have here, though. This is a legal insufficiency claim. No, it's not. You're saying that the evidence that the government proffered at the police stage was legally insufficient to show but for causation as required by Burrage. No, the claim is that Mr. Lund has proven that his conduct was not the but-for cause. That's the claim. Now, maybe that fails on the merits. That might be your skeptical look. But that's the claim. The law is not that you can't get this threshold if your claim fails. But to answer this threshold question about the actual innocence gateway, we do have to properly characterize the claim. And if you're saying there's no Strickland claim, although unless we really expansively construe the petition and the reply, but you're claiming that, in addition, there's a freestanding Burrage claim, we have to properly characterize that. And calling it a claim of legal insufficiency because the evidence in the government's possession that it proffered at the police stage doesn't show but-for causation is one way to describe the claim. You're describing it as a claim that this conduct is taken wholly outside of the criminal law. I'm having difficulty with that characterization of this freestanding Burrage claim. Let me try to, if I may, sort of thank you. Because this is very complicated. The procedural history here is that we have a petition that's pro se. I'm construing it the way that I would have presented it because I think that that's what Mr. Lund's entitled to. What he claimed was that he was sentenced in violation of Burrage. On a regular 2255, if it's timely, that's perfectly cognizable. That's fine. The government responds and says, this is untimely. And he offers excuses for that. He says, you can excuse the untimeliness, either because of equitable tolling or actual innocence. Then the district court says, all right, I've evaluated both of those. It doesn't excuse the untimeliness. I'm not even going to get to the merits of the Burrage claim or what we consider an ineffective assistance claim because I find that I cannot do so, that actual innocence cannot be the result of new law. Now, the actual innocence claim is different from the Burrage claim. It's a harder hurdle. You have to jump a lot higher because Mr. Lund has to prove that his actions under the statute, as interpreted by Burrage, were not a but-for cause of the two decedent's deaths. He has to prove that. And the standard for proving that is that no reasonable juror would be able to return a guilty verdict, would be able to find guilt beyond a reasonable doubt. So I've contributed to that confusion because I talk about the insufficiency of the evidence. But what that's in relation to in actual innocence is to say it's that no reasonable juror could find guilt beyond a reasonable doubt. That's the actual innocence standard. And then if you got past actual innocence to the merits, our suggestion in our brief is that necessarily they're going to make out a Burrage claim because actual innocence encompasses the Burrage claim and is actually  So I hope that answers the question. Thank you, Your Honor. Thank you, Counsel. Thanks to both counsel. The case is taken under advisement.